On 15 November, 1852, the following note was executed by the parties thereunto signed, viz.:
"SALISBURY, 15 November, 1852.
"Ninety days after date, we, H. D. Kendall, as principal, and Francis Locke and Mark Jones, as securities, promise to pay D. A. Davis or order twelve hundred dollars, for value received, negotiable and payable at the Salisbury branch of the Bank of Cape Fear.
 "H. D. KENDALL. "F. LOCKE. "MARK (his X mark) JONES.
"B. W. Simmons, witness as to M. Jones."
Kendall, the principal named above, became insolvent after the note was made, and suit having been brought by the bank, judgment was obtained and the whole amount collected off of Jones. *Page 34 
This suit is brought by the plaintiff Jones, alleging that shortly before the signing of this note he had signed another for $1,300, payable to the same bank, in which Francis Locke was principal and H. D. Kendall and himself sureties; that Locke came to him in company with the subscribing witness, B. W. Simmons, and told him that the (24) former note, which he produced, had been offered at the bank and rejected because it was for too great a sum by one hundred dollars; that he wished him to sign this, which was for a hundred dollars less than the other; that the note was not read to him, but the plaintiff, being illiterate, asked Locke the purport of the note, who assured him that it was just like the other which he had signed; that he asked Simmons, when he was about to sign it, "if it was just like the first," who replied that it was for a hundred dollars less; that having confidence in Locke and believing his assurance that he was becoming his surety in the said note, confirmed, as he understood it, by the reply of Simmons, he put his name to it; that he believed Kendall was then in failing circumstances, and he would not have gone his surety for any amount; that a fraud was practiced upon him in the transaction by the misrepresentation of Locke and the evasion of Simmons.
The prayer of the bill is that the defendant, as the personal representative of Locke (who has since died), may make good to him the amount he has paid on account of said note. The bill states, by way of anticipation, that after the death of Locke the plaintiff sued the defendant in a court of law, alleging that he was the joint surety of Locke in the note aforesaid, and recovered judgment for one-half of the sum paid by him in bank; that he has thus brought suit at law because he was advised he could not recover the whole sum, but he avers that he has not taken out execution on that judgment, nor has he received anything from Locke's estate on that account.
The defendant answered that he had no personal knowledge of the transaction, upon the faith of what his intestate told him, and also from what he had learned from Simmons, he was satisfied Jones knew well that he was signing as the surety of Kendall. He insists upon plaintiff's own version of the transaction as alleged in the court of law.
B. W. Simmons testifies to the affair as stated in the answer. He says that the note was read to the plaintiff three, four, or five times; that Jones hesitated about signing as surety for Kendall, but was (25) willing to sign for Locke; that Locke told him Kendall was good, and that there was no danger in being his surety, and being thus persuaded, he did, with a full knowledge of its nature, execute the note in question, and he witnessed it. The witness further stated that he understood from both parties that Locke and Mark Jones had signed a note for H. D. Kendall at the Bank of Salisbury for $1,000, which *Page 35 
had been sued on, and that the note in question was to take up and satisfy the said note in suit. The only other person present at the transaction were Turner Ingram and his wife. These two persons testified that the note was not read to Jones, but he was told by both Locke and Simmons that it was like the other note. There was evidence as to the character of Simmons, the most of which pronounced his character good, but all said he was addicted to the excessive use of ardent spirits. Some of them said, however, that about the time of this transaction he had been sober for a year or two.
This case has received from the Court the consideration which its importance, in a pecuniary point of view, merits, and our conclusion is against the plaintiff's right to relief in this Court.
The equity of the bill rests upon the allegation that the complainant was surety for the defendant's intestate upon a certain note to the Bank of Salisbury.
In the first place, it is to be remarked, the contents of the note show the contrary, and it is but reasonable to require of complainant to take the laboring oar in explaining this presumption against him.
There were present at the transaction, according to plaintiff's testimony, the parties Benjamin W. Simmons and Turner Ingram and wife. Ingram and wife depose that the note was not read, but complainant was told by both Locke and Simmons that it was like a (26) former note in which Locke was principal and Jones surety.
On the other hand, Simmons, who was called upon to be the subscribing witness to the note, says that it was read repeatedly; that Jones' objections to signing it in the condition it was were discussed and finally abandoned by him, and that he understood perfectly he was becoming surety for Kendall and not for Locke.
Added to this presumptive and direct proof against the allegation of the bill is the institution of a suit at law by Jones against Locke's administrator for contribution, as from a cosurety, which has much force as a matter of record against the equity of the bill.
The other proofs, as that of Waller upon the subject of Locke's admission and of divers witnesses as to the character of Simmons, we regard as of little weight.
Upon the whole, we think the preponderance of testimony is decidedly against the equity of the bill, and it is therefore dismissed with costs.
PER CURIAM. Bill dismissed. *Page 36